IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAVID DEWAYNE CHURCH, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | NO. 3:17-CV-00972 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## MEMORANDUM OPINION

Petitioner David DeWayne Church, Jr. commenced this action by filing a Motion Under 28 U.S.C.
§ 2255 To Vacate, Set Aside, or Correct Sentence (Doc. No. 1, Petition). Via the Petition, he seeks to
overturn his conviction and 170-month sentence on one count of possession of a firearm (a Smith and
Wesson .40 caliber pistol) by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and one count of
possession with intent to distribute hydromorphone (Dilaudid) in violation of 21 U.S.C. § 841(a)(1).
Petitioner subsequently filed what he captioned an "Amended Petition" (Doc. No. 16), which serves not to
add new claims but to provide certain commentary regarding the two claims set forth in the Petition. The
Government later filed a response in opposition to the Petition (Doc. No. 24), as well as an affidavit of
Petitioner's former attorney.

For the reasons stated herein, Petitioner's Petition, as amended, will be DENIED, and this action
will be DISMISSED.

## BACKGROUND[1]

On April 10, 2013, a three-count indictment was filed against Petitioner, charging him in
Counts One and Two respectively with the above-referenced crimes of conviction, and in Count Three

---

[1] References below to "R." are to the docket numbers in the underlying criminal case, No. 3:13-cr-00067,
over which the undersigned did not preside at any point.

with a so-called "Section 924(c)" violation, *i.e.*, possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A). (R. 1, Indictment). Notably, the Section 924(c) violation was predicated on the same crime that was charged in Count Two, *i.e.,* possession with intent to distribute hydromorphone.

On February 13, 2014, Petitioner filed a motion to suppress evidence, namely the pistol and hydromorphone pills that he was charged in Counts One and Two, respectively, with illegally possessing. (R. 36). On March 5, 2014, the district court held a suppression hearing. At the hearing, Metropolitan Nashville Police Department Detectives Jeff Moseley and Daniel Bowling testified. Defendant also testified; he was the only other witness at the hearing. The Sixth Circuit opinion affirming Petitioner's conviction succinctly summarizes the gist of the testimony and the documents introduced at the suppression hearing:

> In August 2012 Nashville police detectives Jeff Moseley and Daniel Bowling went to David Church's home to serve him with a warrant for violating his probation. Church arrived at his home shortly thereafter, carrying a bag of fast food. After Moseley and Bowling established Church's identity, they placed Church under arrest in his driveway. Church asked that he be allowed into the house to eat his food and call his girlfriend; Moseley and Bowling obliged, and accompanied Church inside with his consent. The detectives told Church that they smelled burnt marijuana in the house, and Church admitted that he had recently smoked marijuana. He proceeded to lead Bowling upstairs to show Bowling a marijuana blunt. Church then called his girlfriend, who came to the house and told police that, despite her efforts to get him to stop, Church regularly smoked marijuana at the house.

> Moseley left the house to prepare a search-warrant affidavit while Bowling stayed with Church and Church's girlfriend. In his affidavit, Moseley recounted the detectives' visit to the house and their conversations with Church and his girlfriend. He swore that there was "probable and reasonable cause to believe that [Church's house] is/are now in possession of certain evidence of a crime, to wit: violations of one or more of the following state laws as set forth in TCA Sections 39–12–204 [RICO], 39–14–903 [Money Laundering], and 39–17–417 [Tennessee Drug Control Act of 1989]," and he requested a warrant to search Church's house for "controlled substances, [and] controlled substances paraphernalia," among other things. A state magistrate issued a search warrant based on Moseley's affidavit. The police executed the warrant that afternoon. In an upstairs closet, they found 4.8 grams of marijuana and 8 dilaudid (hydromorphone) pills, along with a safe. The police asked Church for the code to the safe. Church refused to provide it, so police used a prying ram to break in. The safe contained 800 dilaudid pills, a Smith & Wesson .40–caliber handgun, and a box of ammunition.

*United States v. Church*, 823 F.3d 351, 354 (6th Cir. 2016).

At the conclusion of the suppression hearing, the district court orally denied the motion in full, then later memorialized its ruling in a brief written order (R. 50).

On January 12, 2015, Petitioner entered into a plea agreement under Fed. R. Crim P. 11(c)(1)(C) whereby he would plead guilty to Counts One and Two of the indictment. (R. 59). The plea agreement set forth a joint sentencing recommendation—binding on the district court if accepted by the district court—of a total sentence of 170 months' imprisonment (and a four-year term of supervised release).

The plea agreement also set forth prior convictions supposedly qualifying Petitioner as a Career Offender for purposes of the United States Sentencing Guidelines. Those convictions included Felony Evading Arrest in a Motor Vehicle, Davidson County Criminal Court Case No. 2005-I-760, for which Petitioner received a sentence of one year on July 8, 2005. (R. 68 at ¶ 31, 44). They also included two drug trafficking convictions: (1) Sale of Cocaine, a class C felony, Davidson County Case No. 2004-A-210, for which Petitioner received a sentence of 3 years on April 22, 2004; (2) Delivery of Schedule II Controlled Substance (Dilaudid), a class C felony, Davidson County Case No. 2009-B-1594, for which he received a sentence of 4 years and 6 months on July 16, 2009. A third drug trafficking conviction included in the Presentence Investigation Report ("PSR"), further supported Petitioner's qualification as a Career Offender: Possession with Intent to Distribute a Schedule II Controlled Substance, Davidson County Case No. 2006-D-2990, for which Petitioner received a sentence of 5 years on December 14, 2006. (*Id*. at ¶31, 46). In the plea agreement, Petitioner expressly retained his right to appeal the district court's denial of his suppression motion but otherwise waived his right to challenge his conviction and sentence (except for claim of involuntariness of the plea, prosecutorial misconduct, or ineffective assistance of counsel) either on appeal or via a Section 2255 motion (R. 59 at 10-11).

The district court accepted the parties' joint sentencing recommendation, and thus, on April 6, 2015, sentenced Petitioner to 170 months total (the statutory maximum of 120 months on Count One to run concurrent with 170 months on Count Two). Notably, this sentence was within the guideline range (151-188 months) as first estimated by the parties, (R. 59 at 6-7), then recommended in the Presentence Investigation Report, (R. 68, ¶ 89), and then confirmed by the district court at sentencing. (R. 64). Per the plea agreement, (R. 59 at 2), the Government dismissed Count Three at sentencing. (R. 64 at 1).

Petitioner filed a timely notice of appeal with respect to the district court's denial of his suppression motion and the judgment, but not his sentence. (R. 66). The Sixth Circuit rejected his challenge, affirming the judgment in the published opinion quoted above.

LEGAL STANDARD

To prevail on a § 2255 motion, a petitioner must demonstrate that the court imposed the sentence in violation of the Constitution, the court was without jurisdiction to impose such a sentence, the sentence was more than the maximum sentence authorized by law, or the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255 (2018). Section 2255 requires "a hearing on such allegations unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (internal quotation marks omitted); *Ray v. United States*, 721 F.3d 758, 760-61 (6th Cir. 2013); *see also Dagdag v. United States*, No. 3:16-cv-364-TAV, 2019 WL 2330274, at *1 n.1 (E.D. Tenn. May 31, 2019) (internal quotation marks omitted) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) ("[W]here the record conclusively shows that the petitioner is entitled to no relief, a hearing is not required.").

A petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle the petitioner to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008). Even when material facts are in dispute, an evidentiary hearing is unnecessary if the petitioner is conclusively entitled to no relief. *See Amr v. United States*, 280 F. App'x. 480, 485 (6th

Cir. 2008). "Stated another way, the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.; accord Arredondo*, 178 F.3d at 782. The decision whether to hold an evidentiary hearing is one committed to the sound discretion of the district court. *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) ("A decision not to hold an evidentiary hearing on a motion for relief under 28 U.S.C. § 2255 is reviewed for abuse of discretion.").

The applicable rules address what the district court may (and must) consider in determining whether to order an evidentiary hearing, where (as here) the motion is not dismissed under Rule 4(b) based on the district court's initial review:

> If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

Rule 8(a), Rules Governing Section 2255 Proceedings. As suggested, Rule 7 permits expansion of the record with additional materials relevant to the motion, such as letters predating the filing of the motion, documents, exhibits, answers under oath to interrogatories, and affidavits. Rule 7(b), Rules Governing Section 2255 Proceedings. As noted above, in this case the record has been expanded to include an affidavit from Petitioner's counsel in his underlying criminal case, Michael Holley ("prior counsel").

## DISCUSSION

Petitioner makes two claims in his Petition as amended. Neither has merit, and neither requires an evidentiary hearing.

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first claim, Petitioner asserts that in his underlying criminal case, he was denied effective assistance of counsel in violation of the Sixth Amendment. A defendant has a Sixth Amendment right

to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "It has long been settled that a guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (internal quotation marks omitted). In *Strickland*, the Supreme Court put forth a test to evaluate claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that rendered the result unreliable.

*Strickland*, 466 U.S. at 687. Under the first prong of the *Strickland* test, a petitioner must establish that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* at 689. Strategic choices made by counsel after thorough investigation are virtually unchallengeable. *Id.* at 690. Petitioner bears the burden of proving by a preponderance of the evidence that counsel was deficient. *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

Petitioner claims that prior counsel's performance was deficient in that counsel: (1) failed to conduct adequate (or even any) pretrial investigation, (Doc. No. 1 at 4; Doc. No. 2 at 15); (2) did not properly cross-examine officers at the suppression hearing regarding the search warrant (Doc. No. 16 at 2); (3) failed to properly familiarize himself, and provide competent advice to Petitioner, as to the applicable guideline range and Petitioner's potential sentencing exposure (including possible statutory enhancements), prior to the conclusion of plea negotiations and the entry of Petitioner's guilty plea (*id.*; Doc. No. 2 at 16-18); (4) failed to advise Petitioner of the relative respective merits of pleading guilty with a plea agreement, pleading guilty without a plea, or proceeding to trial considering his

possibility of success at trial and his potential guideline range and sentencing exposure under each scenario (*id.* at 15, 18-19; Doc. No. 16 at 2); (5) failed to object to the PSR's guideline calculations, in particular its four-level upward adjustment under U.S.S.G. § 2K2.1(b)(6)(B) for possession of the firearm in connection with another felony offense (Doc. No. 1 at 4; Doc. No. 2 at 19-21); (6) advised Petitioner that he had to plead guilty, so that he could "get a sentence reduction for acceptance of responsibility" (*id.* at 15); (7) advised Petitioner that he should not go to trial because both officers were saying the same thing and because he faced a 30-year sentence if he went to trial (*id.*); (8) incorrectly advised Petitioner that his guideline range was approximately 360 months, thereby causing him to enter a plea and fail to consider the merits of proceeding to trial in this matter (*id.*: Doc. No. 16 at 2).[2]; and (9) failed to challenge the staleness in the warrant (*id.*). The Court will resolve this litany of complaints by addressing each of prior counsel's nine alleged failings in turn.

As for the first complaint, that prior counsel failed to conduct adequate (or even any) pretrial investigation, the Court rejects it without need of an evidentiary hearing because it cannot be accepted as true, being contradicted by the record and being a mere conclusion unsupported by statements of fact. Prior counsel has submitted an affidavit explaining in detail the substantial and pertinent investigative steps he took in advance of the suppression hearing. (Doc. No. 26-1). *He also states that he is unaware of any investigative steps Petitioner asked him to take that he did not take*. (*Id*. at ¶ 2). The Court credits these averments for numerous reasons: the specificity of the identified investigative steps; prior counsel's incentive not to expose himself to criminal liability for submitting knowingly false sworn statements; his underwhelming (if not entirely non-existent) motive to defend his actions by lying at the expense of his former client; the fact that his defense of his actions is measured and not hyperbolic; and the fact that his representation set forth above in italics is entirely consistent with the

---

[2] In his Petition, Petitioner actually alludes to only four of these nine alleged failings (Nos. (1), (3), (4) and (5)). (Doc No. 1 at 4). But based on the memorandum in support of the Petition (Doc. No. 2) and the Amended Petition, the Court perceives a reference to each of the nine and thus will address all of them.

fact that Petitioner has identified no investigative steps Petitioner asked him to take. Nor does Petitioner

offer an explanation of the steps prior counsel should have taken and why he should have known to

take them. Indeed, Petitioner admits that he did not know of any witnesses capable of helping prior

counsel show at the suppression hearing that the testifying officers were lying on their key assertion

that Petitioner invited them into the house. (Doc. No. 2 at 15). The record belies his wholly conclusory

claim of an inadequate pretrial investigation by prior counsel. Still less does it show how such alleged

inadequacies hurt his defense at all, let alone prejudiced him by depriving Petitioner of a fair trial with

a reliable result.

As for the second complaint, it is wholly conclusory. Petitioner fails to specify how prior

counsel's cross-examination was not done "properly" or how it could have been done more effectively.

Still less does it show how such alleged inadequacies made a difference at the suppression hearing or

otherwise hurt his defense at all, let alone prejudiced him by depriving him of a fair trial with a reliable

result.

The third and fourth complaints can be analyzed together. The Court will assume *arguendo*

that prior counsel failed to advise Petitioner as to the applicable guideline range and Petitioner's

potential sentencing exposure (including possible statutory enhancements) under the different possible

scenarios—*i.e.*, if Petitioner were to plead guilty pursuant to a plea agreement, if Petitioner were to

plead guilty without a plea agreement ("open"), and if Petitioner were to be found guilty at trial. The

Court will do so even though prior counsel directly disputes this in his affidavit (Doc. No. 26-1). The

Court further will assume *arguendo* that due to these alleged failures, counsel's performance was so

deficient as to satisfy *Strickland's* first prong of a claim of ineffective assistance of counsel.

That leaves the second prong of the *Strickland* test, which in this context requires a petitioner

to demonstrate with "a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*

*Lafler v. Cooper*, 566 U.S. 156, 174 (2012). As the Sixth Circuit has recently explained regarding the second prong:

> This is an objective, not a subjective, test. [*Lockhart*, 474 U.S.] at 60. A defendant's bare recitation that he would have proceeded to trial had he received different advice is not enough; rather, "to obtain relief on this type of claim, a [defendant] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

*Ellis v. United States*, No. 19-6047, 2020 WL 1272625, at *2 (6th Cir. Jan. 30, 2020).

In this case, had he been correctly advised, Petitioner would have been informed that as a "career offender" for purposes of Part B of Chapter Four of the United States Sentencing Guidelines:[3] (a) in the event of a guilty plea to Counts One and Two alone, his advisory guideline range should be  calculated by the court as 151 to 188 months, and (b) in the event of a guilty plea to all three Counts (or even just Counts Two and Three or perhaps even Count Three alone, as discussed below), his advisory guideline range should be 262 to 327 months. He also would also have been informed that as a career offender: (a) in the event of conviction at trial on Counts One and Two alone, his advisory guideline range should be 210 to 262 months, and (b) in the event of a conviction at trial on all three Counts (or even just Counts Two and Three or perhaps even Count Three alone, as discussed below), his advisory guideline range should be 360 months to life imprisonment. He also would have been advised that his mandatory minimum sentence (and advisory guideline sentence) on Count Three, whether resulting from a trial or guilty plea, would be five years, to run consecutive to whatever sentence would be imposed on Counts One and Two.

And if properly advised, Petitioner would also have been informed by prior counsel as to the relationship between these realities and the options facing him. As to pleading with a plea agreement, Petitioner would have been advised that he had been offered a plea deal as to Counts

---

[3] As discussed below, Petitioner's claim that he did not qualify as a career offender at the time of sentencing is without merit; he indeed was (and still is) subject to the Career Offender guidelines of Chapter 4, Part B.

One and Two with a (so-called) "binding" recommendation under Fed. R. Crim P. 11(c)(1)(C), that, if accepted by the district judge, would result in: (a) a sentence on those two counts (i) in the middle of the guideline range as calculated with credit for acceptance of responsibility included, and (ii) well below the guideline range he could expect if convicted at trial and thus not entitled to such credit, and (b) dismissal of Count Three, thus sparing Petitioner from Count Three's mandatory and consecutive minimum sentence and much higher guideline range. As to pleading open, Petitioner would have been advised that pleading open necessarily would mean pleading guilty to all three counts, thus subjecting Petitioner to a 262-327 month guideline range (with full acceptance credit included)[4] and Count Three's minimum 60-month sentence to run consecutive to whatever sentence would be imposed on Counts One and Two.

Petitioner therefore would have been advised that, absent a huge downward variance from 262 months to 170 months), his sentence would necessarily be higher if he pled open than if he (and, eventually, the judge) accepted the negotiated plea bargain for a total sentence of 170 months. And Petitioner further would have been advised that he would be unable to appeal the denial of his suppression motion if he plead open, but not if he accepted the plea bargain (which expressly preserved his right to appeal).[5]

---

[4] *See* U.S.S.G. § 4B1.1(c)(3) (prescribing a guideline range of 262-327 months for career offenders convicted on Section 924(c) charges and credited with a total downward adjustment of three levels for acceptance of responsibility).

[5] The Court expressly advised Petitioner at his plea hearing, prior to receiving Petitioner's guilty plea, that Petitioner's plea agreement preserved for him the right to appeal the denial of the motion to suppress. (Doc. No. 75 at 9:21-10:13; 15:4-6; 21:17-19). The Court also advised Petitioner of the effect of Petitioner prevailing on appeal, *i.e.,* that in that case Petitioner would have the right to withdraw his guilty plea. (*Id.* at 10:10-13). Unstated but easily inferable was that the fact upon any such withdrawal of the guilty plea, the Government would have to proceed, if at all, with the evidence suppressed, obviously an enormous blow to the Government's case.

As for the option of going to trial, Petitioner would have been advised of several very difficult realities. First, unless he prevailed on an appeal of the denial of his suppression motion, the Government would have been in a very strong position to obtain convictions at trial. In fact, prior counsel avers that he advised Petitioner that absent suppression, "there was [no] viable defense for [Petitioner at trial] given the location of the gun and drugs and his post-arrest statements"; he further avers that Petitioner agreed with this and always intended to plead guilty if the suppression motion were denied[6] (Doc. No. 26-1 at 2). Second, such an appeal would be unavailable before trial—and instead would be available only after conviction at (a first) trial— unless prior counsel managed to secure the right to appeal post-plea in a negotiated plea agreement (which in fact prior counsel had managed to do). Third, in the event of conviction on Count One and Count Two at trial, he was virtually certain not to receive credit for acceptance of responsibility, meaning his offense level would be three levels higher than if he pled guilty— making his guideline range 210-262 months instead of 151-188 months. Fourth, in the event of conviction at trial on all three Counts, or just Counts Two and Three[7] (and perhaps even on just

---

[6] Notably, the factual basis set forth in his plea agreement, and recited at his plea hearing, reveals that Petitioner did not have a defense of actual innocence on Count 1 or Count 2; as he admitted, he was in fact guilty of those charged crimes. Thus, for an acquittal on those counts, he would have had to rely on the Government somehow managing to fail to meet its burden of proof (or jury nullification); these are unlikely scenarios, even given that trials generally are unpredictable affairs. The same holds true for Count Three, with the qualification that there was a basis to claim affirmative innocence on Count Three, *i.e.*, that even if he possessed the gun and the drugs in violation of federal criminal law (as he has admitted he did), he somehow did not possess the gun "in furtherance of" the illegal possession of the hydromorphone. But this would have been a difficult argument to sustain, given, as prior counsel put it, "the location of the gun and drugs and his post-arrest statements."

[7] An acquittal on Count One alone would not have affected the applicability of the table in U.S.S.G. § 4B1.1(c) (3) geared to Section 924(c) convictions, because Petitioner still would have been convicted of the Section 924(c) violation as well as the crime underlying his Section 924 charge (Count Two), which was a controlled substance offense upon which the application of Career Offender guidelines can be premised. *See* U.S.S.G. § 4B1.1(a).

Count Three),[8] he would be facing a mandatory consecutive five-year sentence on Count Three

and, under the table set forth at U.S.S.G. § 4B1.1(c)(3), a guideline range of 360 months to life

imprisonment. Fifth, a downward variance is harder to come by after conviction at trial than after

a guilty plea (with its associated acceptance of responsibility aiding the defendant in the balancing

of the sentencing factors under 18 U.S.C. § 3553(a)).

In light of the array of poor choices facing Petitioner after he lost the suppression motion,

prior counsel negotiated a plea agreement that by any measure was objectively favorable for

Petitioner compared to an open plea. First, the agreement under Rule 11(c)(1)(C) eliminated the

risk that an unexpectedly high sentence would result from the guilty plea; if the Court were to

announce a refusal to accept the parties' agreed 170 month sentence, Petitioner could then simply

---

[8]   A stand-alone conviction of a Section 924(c) violation can itself be a "controlled substance offense" that triggers application of the Career Offender guidelines. Specifically, as the Fourth Circuit explained in *United States v. Robinson*, 447 F. App'x 512 (4th Cir. 2011):

> USSG § 4B1.1(a)(2) provides that the instant offense of conviction must be "either a crime of violence or a controlled substance offense" for the career offender provisions to apply. USSG § 4B1.1(a)(2). As explained in the commentary to USSG § 4B1.2, a violation of 18 U.S.C. § 924(c) is a controlled substance offense so long as the "offense of conviction established that the underlying offense was a . . . 'controlled substance offense.' " USSG § 4B1.2, cmt. n. 1. It is undisputed that the offense underlying Robinson's § 924(c)(1)(A) conviction is a controlled substance offense within the meaning of USSG § 4B1.2(b); namely, possession with the intent to distribute 5.72 grams of crack cocaine. Thus, Robinson's § 924(c)(1)(A) conviction qualifies as a "controlled substance offense" for purposes of USSG § 4B1.1(a)(2)

*Id.* at 512-15. Thus, as with defendant Robinson, if Petitioner had been found guilty only of the Section 924(c) violation but not the offenses charged in Counts One and Two (which is conceivable even if it would mean that the jury reached an inconsistent verdict), Petitioner presumably would have been deemed a Career Offender, and subject to the guideline table at U.S.S.G. § 4B1.1(c)(3), because the offense underlying his Section 924(c) violation as specified in the indictment was a "controlled substance offense"—the same drug trafficking crime charged in Count Two. The only potential  caveat to this conclusion is the possibility of the conviction on Count Three being thrown out based on the inconsistency of the verdict.

Therefore, Petitioner's conviction at trial on Count Three (the section 924(c) charge) alone conceivably could have resulted in a guideline range of 360 months to life imprisonment. *See* U.S.S.G. § 4B1.1(c)(3) (prescribing a guideline range of 360 months to life for a career offender convicted of a Section 924(c) violation without acceptance of responsibility); *United States v. Underhill*, 392 F. App'x 175, 176 (4th Cir. 2010) ("Because Underhill is a career offender, and the § 924(c) conviction was the only count of conviction, the district court properly determined the applicable guideline range using the table in *U.S. Sentencing Guidelines Manual* § 4B1.1(c)(3) (2007)").

withdraw his guilty plea, thus putting the parties back into their pre-plea posture. Second, under the agreement, Petitioner avoided the 60-month mandatory consecutive sentence on Count Three. And third, Petitioner preserved his right to appeal the denial of his motion to suppress. None of these would have been possible had he pled open. And the threshold choice to plead guilty—be it by open plea or a plea bargain of any kind—was itself objectively sound in that it ensured a vital downward adjustment for acceptance of responsibility and maximized the possibility of a downward variance.

Petitioner asserts—baldly, in conflict with prior counsel's affidavit, and contrary to the impression he gave at his plea hearing that he was adequately advised and informed—essentially that he was not advised about the various prevalent options or his sentencing exposure under applicable statutes and guidelines. The claim is dubious. But ultimately it need not be resolved, because he cannot show that the result of these alleged deficiencies was the prejudice *Strickland* requires him to show. As indicated above, Petitioner's bare assertion that he would have rejected the plea bargain had he received different advice is insufficient; rather, he must convince the Court that a decision to reject the plea bargain would have been rational under the circumstances. Given his very poor alternatives, the Court is far from convinced of that. This case has much in common with a recent case, *Ellis v. United States*, No. 19-6047, 2020 WL 1272625 (6th Cir. Jan. 30, 2020), in which the Sixth Circuit affirmed the district court's denial of relief to the petitioner, Ellis:

> Ellis also failed to show that [prior counsel's] recommendation to plead guilty and receive a 168-month sentence—rather than risk denial of the motion to suppress, a much greater sentence if convicted after a trial, and denial of a downward sentencing variance—was anything other than a reasonable strategic decision. *See Strickland*, 466 U.S. at 690. The benefits that Ellis received by accepting the Rule 11(c)(1)(C) plea agreement outweighed the risks that he faced by rejecting it, and he has not shown that "a decision to reject the plea bargain would have been rational." *See Padilla*, 559 U.S. at 372; *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003).

*Id.* at *3. Petitioner here likewise risked both a denial of a similarly huge downward variance and a much greater sentence had he been convicted at trial.[9] And, unlike Ellis, Petitioner's suppression motion had already been denied, putting him in an even weaker position during plea negotiations than Ellis faced. Moreover, unlike Ellis, Petitioner's plea bargain strategically preserved the suppression issue, at least giving Petitioner some chance of reversal and ultimately success.

Finally, the Court notes that Petitioner himself does not seem sure what exactly his complaint here is. At one point in his memorandum in support of the Petition, he claims that absent prior counsel pushing the negotiated plea agreement, "there is a reasonable probability that he would have opted to plead to the Indictment without a plea agreement, or he would have proceeded to trial had he been properly informed by counsel of the sentencing exposure he faced." (Doc. No. 2 at 18-19). This statement is unhelpful because it merely begs the question of whether either such option would have been a better option than agreeing to the negotiated plea bargain. And it also seems to be directly contradicted a few sentences later. There, Petitioner writes, in a confusing mélange:

> Church has shown that there is a reasonable probability that, but for his attorney's unprofessional advice in failing to properly and correctly inform him of the relevant circumstances and likely consequences of pleading guilty without a plea agreement, as opposed to pleading guilty to government's Plea Agreement, there is a reasonable probability that this Court would have imposed the same sentence and he would have retained his right to appeal. See [*Lafler*, 132 S. Ct. at 1384]. It is hard to imagine that Church's attorney didn't know this and encouraged him to plead guilty straight up to the Indictment.

(*Id.* at 19). This time, he appears to be complaining that prior counsel "encouraged him to plead guilty straight up to the Indictment [open]." But perhaps not, given that in the prior sentence he seems to be complaining that he was not advised to plead open. But if his complaint truly is that

---

[9] The downward variance Ellis secured—from 262 to 168 months—was very similar to the one secured by Petitioner here, being just two months greater.

his prior counsel caused him not to plead open, one wonders what the resulting harm was; Petitioner himself describes it as the denial of a reasonable probability to get the same sentence and retain the right to appeal.[10] In other words, the alleged harm from not pleading open (due to prior counsel's alleged poor advice) was that (a) Petitioner did not receive the same sentence he received under the plea agreement he accepted at his counsel's recommendation; and (b) he did not preserve the right to appeal such sentence. The first of these obviously constitutes no harm at all. As for the second, by pleading open Petitioner would have lost the right to appeal the denial of the suppression motion, which on the front end would have objectively appeared to be a more important right than the right he now heralds, the right to appeal a 170-month sentence. And Petitioner ignores the fact that, by pleading open, he would have been subject to a 60-month mandatory minimum, consecutive sentence on Count Three, making it entirely speculative and rather unlikely that he would have received a 170-month (or lower) sentence by pleading open. At least as speculative is his implication that had he received a 170-month sentence on Counts One through Three, representing a major downward variance, it would have been reversed on appeal and ultimately reduced on remand to something below 170 months. Petitioner provides no reasons whatsoever to envision this scenario as likely.

In short, Petitioner's third and fourth complaints are without merit.

Petitioner's fifth complaint can be dispatched promptly. He complains that prior counsel failed to object to the PSR's proposed four-level upward adjustment under U.S.S.G. § 2K2.1(b)(6)(B) for possession of the firearm in connection with another felony offense. Even assuming that such an objection should have been made by any counsel acting objectively reasonably, the failure to make it constitutes no grounds for relief because such objection would

---

[10] From the context, the "right to appeal" referred to here seems to be the right to appeal the sentence, not the denial of the suppression motion.

have made no difference even if sustained by the district court. Petitioner's guideline range (for both counts of conviction) was subject to the Career Offender guidelines, which called for an adjusted offense level of 32 and final offense level of 29. With or without the four-level enhancement of which Petitioner complains, his adjusted offense level for the counts of conviction calculated under Chapter Two of the Guidelines would have been substantially lower; thus, because this otherwise applicable offense level would been lower, it would have gone unused, giving way to the offense level called for by the Career Offender guidelines. *See* U.S.S.G. § 4B1.1 (b). The Career Offender guidelines drove the guideline range, and it is, to say the least, sheer speculation that had the otherwise applicable guideline range been lower, Petitioner would have fared better at sentencing.[11] It is alternatively immaterial and non-prejudicial because the parties had a binding sentencing recommendation of 170 months that was accepted by the sentencing court. Thus, prior counsel's alleged error here is not material and thus non-prejudicial.

Petitioner's sixth complaint, that prior counsel told him that "he had to plead guilty so that he could "get a sentence reduction for acceptance of responsibility," (Doc. No. 2 at 15), rings hollow. Elsewhere, as discussed above, Petitioner complains more about counsel's advice as to *how* to plead guilty (*i.e.*, open or with a plea agreement) than about being pressured *to* plead guilty. And the claim that counsel told Petitioner, or that Petitioner believed that he *had* to plead guilty, is utterly belied by the record in this case, especially the plea colloquy establishing that Petitioner knew full well he had the right to plead guilty or not plead guilty and that it was his choice. (Doc. No. 75 at 10-11; 16-17). Also, Petitioner further swore under oath that he had not been pressured to plead guilty. (*Id.* at 16).

---

[11] It would have taken some doing for the otherwise applicable guideline range to have made a difference here. The parties had a binding (c) plea agreement, which asked the Court to impose a 170-month sentence irrespective of the court's final guideline calculations, and certainly irrespective of the court's *otherwise applicable* guideline calculations. The district court would have had to reject the plea agreement based for some reason on the relative lowness of the otherwise applicable guideline range. Petitioner would have had to decline his right to withdraw his guilty plea, and the district court would then have had to impose a sentence of less than 170 months.

This shows, at the very least, that when Petitioner actually entered his guilty plea, it was not due to any alleged messaging from prior counsel that Petitioner "had" to plead guilty.

Moreover, prior counsel's alleged statement that Petitioner had to plead guilty "so he can get" a sentence reduction for "acceptance of responsibility" sounds very similar to the statement that Petitioner had to plead guilty "in order to get" a sentence reduction for acceptance of responsibility. It seems likely that prior counsel conveyed the latter concept if, as Petitioner swore, he was not pressured to plead guilty. If prior counsel had in fact made the latter statement, the statement would have been both accurate (as downward adjustments or variance for acceptance of responsibility are extremely rare where conviction is at trial and not by guilty plea) and helpful for Petitioner to know. Given this fact, and the colloquy at the plea hearing, the record fails to support the notion that Petitioner was advised that he simply must plead guilty, let alone that any such advice caused him to plead guilty. Moreover, as indicated above, any advice to plead guilty pursuant to the parties' plea agreement was objectively reasonable and not deficient. Accordingly, Petitioner's complaint here fails to establish deficient performance by prior counsel, let alone any resulting prejudice.

As for Petitioner's next complaint, that prior counsel advised Petitioner that he should not go to trial because both officers were saying the same thing and because he faced a 30-year sentence if he went to trial, it is entirely without merit. The record reflects that both officers *were* saying materially the same thing, and, as discussed below, Petitioner *did* face a 30-year sentence if he went to trial. Prior counsel's advice was not only based on accurate assessments about the case, but also was objectively reasonable; as discussed above a trial portended a bad outcome for Petitioner in terms of both the jury's verdict and his greatly enhanced sentencing exposure.

Petitioner's eighth complaint complains that "he was advised incorrectly that his guideline range was approximately 360 months, thereby causing him to enter a plea and fail to consider the merits of proceeding to trial in this matter." (Doc. No. 16 at 2). In other words, Petitioner claims

that he would have gone to trial had he not been deterred from doing so by prior counsel's incorrect high estimation of a guideline range of 360 months upon conviction at trial. But any such estimation would have been correct. Upon conviction at trial on all counts (or even just Counts Two and Three and perhaps even just Count Three, as discussed above), Petitioner would have faced a guideline range with 360 months at the low end. *See* U.S.S.G. § 4B1.1(c)(3) (prescribing a guideline range of 360 months to life for a career offender convicted of a Section 924(c) violation and receiving no downward adjustment for acceptance of responsibility). Prior counsel's advice was accurate. He did not scare Petitioner away from trial via an inflated estimate of Petitioner's guideline range; if anything, prior counsel refrained from scaring away Petitioner by, as far as Petitioner claims, saying nothing about life imprisonment (and not just 360 months) being within the guideline range. This complaint has no merit.

Finally, Petitioner complains that prior counsel did not challenge the staleness in the warrant. Specifically, he asserts that prior counsel "failed to challenge the staleness of the warrant in the District Court (*e.g.* the date was not indicated), and he even admitted that he messed up by not doing so." (Doc. No. 2 at 16). But Petitioner fails to indicated where prior counsel admitted any such thing; certainly he does not do so in his declaration. And clearly prior counsel did not "mess up" by not making a staleness challenge in the district court. When prior counsel made the challenge on appeal, the Sixth Circuit left no doubt that any such challenge would have been without merit:

> Church contends that the affidavit is stale because Moseley did not recite the date on which he was inside Church's house. But what counts is the affidavit's content, not its "technical perfection." And here Moseley's affidavit made clear that it was not stale.

*Church*, 823 F.3d at 356 (citation omitted).[12] The failure to challenge the search warrant affidavit did not constitute deficient performance, let alone prejudicial deficient performance.

To summarize, each of the nine bases underlying Petitioner's claim of ineffective assistance of counsel is without merit. Thus, the Court rejects Petitioner's claim of ineffective assistance of counsel as a basis for relief under Section 2255.

I.      CAREER OFFENDER STATUS

As his second claim, Petitioner posits that "[i]n light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) and *Holt v. United States*, (No. 16-1793) (7th Cir. Dec. 13, 2016), Church's prior convictions do not qualify him as a career offender requiring resentencing without the career offender enhancement." (Doc. No. 1 at 5). He claims that this "new [Supreme Court case] law would substantively alter the Defendant's sentence by changing his guideline range and enhancement qualification as a career offender." (Doc. No. 16 at 2).

This claim is entirely without merit. Petitioner was classified as a career offender based on three prior Tennessee state drug trafficking felony convictions. If any two of those three properly counted as a qualifying conviction for career-offender classification purposes, then Petitioner was properly classified as a career offender. It is true that, based on a Sixth Circuit case handed down since the parties set forth their respective legal positions in this case, one of the three does not properly count, *i.e.,* the July 16, 2009 Davidson County conviction for delivery of Schedule II Controlled Substance (Dilaudid). Specifically, in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), the Sixth Circuit held (for reasons not pertinent here) that a Tennessee conviction for

---

[12] Because the staleness issue had not been raised in the district court, the Sixth Circuit addressed the issue under a plain-error standard of review. *Church*, 823 F.3d at 356. But the Sixth Circuit made clear not just that the absence of a staleness finding was not plain error, but that it was not error at all because the information in the Detective Moseley's affidavit "clear[ly]" was not stale. *Id.*

"delivery" of drugs in violation of Tenn. Code Ann. § 39-17-417(a)(2) is not a qualifying conviction for career-offender classification purposes. But Petitioner cannot invoke *Havis* to attack the qualifying status of this conviction (or any conviction) in the current proceeding which is a collateral attack on his conviction and sentence. "Petitioner is unable to avail himself of the *Havis* decision because it has not been made retroactive to cases on collateral review, including motions to vacate sentence." *Chapman v. Terris*, No. 19-11247, 2019 WL 5733708, at *2 (E.D. Mich. Nov. 5, 2019) (citing *Bullard v. United States*, 937 F.3d 654, 657 (6th Cir. 2019)).

Even if he could avail himself of *Havis*, Petitioner still would have two drug trafficking convictions that each qualify as a "controlled substance offense" for purposes of the Career Offender guidelines, notwithstanding *Havis*.[13] Moreover, he has a "crime of violence" conviction, for felony evading arrest, that properly counted at the time of sentencing and—contrary to the Government's unwarranted concession[14]—still properly counts. Thus, with or without *Havis*,

---

[13] These qualifying convictions are: (i) the Davidson County felony conviction for Sale of Cocaine, and (ii) the Davidson County felony conviction for Possession with Intent to Distribute a Schedule II Controlled Substance.

[14] The Government sells its position short, offering that although this felony conviction for evading arrest counted towards career-offender status at the time of sentencing, it no longer does "after *Johnson v. United States*, 135 U.S. 2551 (2015)." (Doc. No. 24 at 8 n.3). In *Johnson*, the Supreme Court held that it is a violation of due process to impose an increased sentence under the Armed Career Criminal Act (ACCA) based on counting a conviction as a "violent felony" due to the conviction falling within the so-called residual clause of the definition of "violent felony" set forth at 18 U.S.C § 924(e)(2)(B); this, the Supreme Court explained, is because the residual clause is void for vagueness. The question here, though, is not what constitutes a "violent felony" for purposes of the ACCA. The issue here is what constitutes a "crime of violence" for purposes of the Career Offender provisions of the advisory Sentencing Guidelines.

*Johnson* is simply inapplicable to that issue. In *Beckles v. United States,* 137 S. Ct. 886 (2017), the Supreme Court held that "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and that § 4B1.2(a)'s residual clause is not void for vagueness." *Id.* at 895. "As a result, the rulings in *Beckles* and *Raybon* [*v. United States*, 867 F.3d 625 (6th Cir. 2017)] dictate that the protections afforded by *Johnson* to defendants sentenced under the ACCA's residual clause cannot be extended to [the defendant], who was sentenced as a career offender under an advisory Guidelines scheme." *United States v. Sublett,* 729 F. App'x 380, 383 (6th Cir. 2018). *Johnson* therefore does not impact the viability of a convictions status as a "crime of violence" for purposes of the Career Offender guidelines. The Government's contrary statement, though laudable for its good intentions and candor, is incorrect.

Petitioner has more than the number of qualifying convictions—two—required to be a career offender.

None of the three cases invoked by Petitioner changes this result, as each is inapplicable here. *Mathis* dealt with what did (or did not) constitute "a violent felony" for purposes of the Armed Career Criminal Act. *Hinkle*, which is non-binding on this Court in any event because it is from the Fifth Circuit, dealt with whether a conviction for delivery of heroin under Texas law qualified as a controlled substance offense under the Career Offender guidelines. *Holt*, reported at 843 F.3d 720, dealt with whether a particular burglary conviction was properly classified as a violent felony under the burglary clause of the ACCA.

In short, the Court rejects Petitioner's challenge to his classification as a career offender for purposes of calculating the advisory guideline range.

Even if such challenge was valid, the Court finds alternatively that Petitioner still would not be entitled to any relief. The Court will assume *arguendo* that on a Section 2255 Motion, and not just on appeal, a petitioner is entitled to resentencing when the original sentence was based on an incorrect guideline range. Even so, the Court finds that Petitioner nevertheless would not be entitled to resentencing. The parties' plea agreement under Fed. R. Crim. P. 11(c)(1)(C) provided, just before stating the parties' agreement to an offense level based on the Career Offender guidelines, that "the parties understand that the sentence agreed to herein is not dependent on these calculations." (Doc. No. 59 at 6). Copious authority from various federal appellate courts supports the notion that "a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement may be reviewed . . . only where that 'agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment.'" *United States v. Williams*, 811 F.3d 621, 624 (4th Cir. 2016) (quoting *Freeman v. United States,* 564 U.S. 522, 131 S. Ct. 2685, 2695

(2011)). This is because "a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is generally based on the agreement and not the Guidelines." *Id.* (citing *Freeman*, 131 S. Ct. at 2695 (Sotomayor, J., concurring in the judgment)). That is the case here. As Petitioner's sentence was expressly based on his Rule 11(c)(1)(C) agreement and not on his guideline calculations, the alleged error in using the Career Offender guidelines to make those calculations is simply not grounds for relief.

## CONCLUSION

For the reasons stated herein, neither of Petitioner's claims have merit. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (Doc. No. 1), as supplemented via the Amended Petition (Doc. No. 16), will be DENIED, and this action will be DISMISSED.

An appropriate Order will be entered.


Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE